THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY<br><br>    Plaintiff,<br><br>    v.<br><br>MANSION LIVE, LLC d/b/a MANSION LIVE, FABIOLA PACHECO DELACRUZ, as Special Administrator of the Estate of ZULMA DANIELA CALDERON PACHECO, deceased, and JOEL CHIMBORAZO,<br><br>    Defendants. | Case No. |

## SCOTTSDALE INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), by its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendants, MANSION LIVE, LLC d/b/a MANSION LIVE ("Mansion Live"), FABIOLA PACHECO DELACRUZ, as Special Administrator of the Estate of ZULMA DANIELA CALDERON PACHECO, deceased ("Delacruz"), and JOEL CHIMBORAZO, and alleges as follows:

### STATEMENT OF THE CASE

1. Scottsdale seeks a judicial declaration that the commercial general liability insurance policy that it issued to Mansion Live does not provide coverage, including a duty to defend or indemnify, against the underlying first amended complaint by Delacruz and Chimborazo, encaptioned *Fabiola Pacheco Delacruz, as Special Administrator of the Estate of Zulma Daniela Calderon Pacheco, Deceased, and Joel Chimborazo v. Mansion Live, LLC d/b/a Mansion Live, JMC Security, LLC, and Kevin Henly, Jr.*, Cir. Ct. Cook Cnty., IL., No. 2025 L 3777 ("Underlying Lawsuit"). In sum, the Underlying Lawsuit arises from an alleged shooting with a firearm that resulted in the death of Pacheco, such that the subject insurance policy's Total Assault and/or Battery Exclusion and Absolute Firearms Exclusion entirely preclude coverage for the Underlying Lawsuit.

## THE PARTIES

2. Plaintiff, Scottsdale is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3. Defendant, Mansion Live, is and was at all relevant times an Illinois limited liability company. Its members are Anthony Quaranta and Nicholas Castaldo, each of whom is an Illinois citizen. Further, Quaranta is a resident of Cook County, IL, and Castaldo is a resident of DuPage County, IL.

4. Defendant, Delacruz, as Special Administrator of the Estate of Pacheco, must be considered a citizen of Illinois, because at the time of her death, Pacheco was a citizen of Illinois. Delacruz is named in this action as a necessary party because of her status as a plaintiff in the Underlying Lawsuit.

5. Defendant, Chimborazo is and was at all relevant times a citizen of Illinois. Chimborazo is named in this action as a necessary party because of his status as a plaintiff in the Underlying Lawsuit.

## JURISDICTION AND VENUE

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Scottsdale, on the one hand, and Defendants, Mansion Live, Delacruz, and Chimborazo, on the other hand; and (b) the amount in controversy with regard to the Underlying Lawsuit exceeds $75,000, as the Underlying Lawsuit seeks damages allegedly resulting from the wrongful death of Pacheco. Further, Mansion Live seeks a defense paid for by Scottsdale in connection with the Underlying Lawsuit, which, alone, should exceed $75,000.

7. This Court may exercise personal jurisdiction over Mansion Live because it regularly transacts business in Illinois, is alleged to have engaged in tortious conduct in Illinois, and seeks insurance coverage, including a duty to defend, for a lawsuit pending in Illinois.

8. This Court may exercise personal jurisdiction over Delacruz and Chimborazo because

they are citizens of Illinois.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Underlying Lawsuit occurred in this judicial district, the subject property is located in this district, and the Underlying Lawsuit is pending in Cook County, located in this district.

10. An actual justiciable controversy exists between Scottsdale, on the one hand, and Defendants, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## THE SCOTTSDALE POLICY

11. Scottsdale issued to Mansion Live a commercial general liability insurance policy, No. CPS8120196, effective from December 15, 2024 to December 15, 2025 ("Policy"). A true and correct copy of the Policy is attached hereto and incorporated herein as **Exhibit A.**

12. The Policy includes the Commercial General Liability Coverage Form (CG 00 01 04 13), which provides, in pertinent part, as follows with respect to "bodily injury" liability (Coverage A):

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>     a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply….
>
> * * *

13. The Policy includes a Total Assault and/or Battery Exclusion (GLS-623 10-21), which modifies the Commercial General Liability Coverage Form and provides:

> The following exclusion is added to the Policy:

**A.** This insurance does not apply to "bodily injury," … medical payments, "damages" or "injury" directly or indirectly arising out of, caused by, or in any way related to:

1. Assault and/or battery committed by any insured, any "employee" of any insured, or any other person; or

2. The attempt or failure to suppress or prevent assault and/or battery by any person in **1.** above; or

3. Any attempt by any person to avoid, prevent, suppress or halt any actual or threatened assault and/or battery; or

4. The selling, serving or furnishing of alcoholic beverages which results or is alleged to have resulted in an assault and/or battery; or

5. A failure to render aid before, during, or after an assault and/or battery; or

6. A failure to notify authorities or emergency personnel including, but not limited to, police and emergency medical technicians before, during, or after an assault and/or battery; or

7. The negligent:

   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Hiring;
   e. Training;
   f. Monitoring;
   g. Reporting to the proper authorities, or failure to so report; or
   h. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1., 2., 3.** or **4.** above; or

8. Any obligation to share damages with or repay someone else who must pay damages resulting from paragraphs **1.** through **7.** above; or

9. Liability of others assumed by an insured under any contract or agreement, either oral or in writing.

**B.** This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the assault and/or battery.

**C.** This exclusion applies regardless of whether the perpetrator of the assault and/or battery was in a position of control, dominance or authority over the victim.

**D.** This exclusion applies to all acts or omissions and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional

tort and shall not be subject to any severability or separation of insureds provision in the policy.

   E. This exclusion applies regardless of whether the assault and/or battery was committed using physical force, weapons, firearms, or any combination thereof.

   F. With respect to this exclusion, "bodily injury" or "injury" includes mental injury or distress, disability, or sexual dysfunction.

   G. We will have no duty to defend any "suit" against any insured seeking injury or damages as a consequence of any assault and/or battery.

*  *  *

14. The Policy includes an Absolute Firearms Exclusion (UTS-650 09-23), which modifies the Policy and provides:

   A. The following exclusion is added to the Policy:

This insurance does not apply to:

**Firearms**

"Bodily injury," … "injury," "damages," "injury or damage" or medical expenses actually or allegedly caused by, arising out of, based upon, or in any way related to "firearms," including:

   1. An act or failure to act by any insured with respect to the prevention or suppression of the use or operation of any "firearms";

   2. Negligent

      a. Supervising;
      b. Hiring;
      c. Employing;
      d. Training; or
      e. Monitoring;

      of others by any insured with respect to the prevention or suppression of the use or operation of any "firearms";

   3. A failure to warn any person about the threat of any "firearms";

   4. A failure to render aid;

   5. A failure to notify emergency personnel including, but not limited to, police and emergency medical technicians; or

   6. Any obligation to share damages with or repay someone else who must pay damages resulting from items **1.-5.** above.

This exclusion applies regardless of whether any alleged act or omission is

committed by the insured, on behalf of the insured, at the direction of an insured, or by or at the direction of any other person or entity.

This exclusion applies regardless of whether any alleged act or omission is on premises owned or occupied by an insured, or owned or occupied by any other person or entity.

This exclusion applies regardless of the intent or degree of culpability of any insured or of any other person or entity.

This exclusion applies regardless of whether any other cause, event, "occurrence," material or substance contributed concurrently or in any sequence to any alleged "bodily injury,"… "injury," "damages," "injury or damage" or medical expenses.

This exclusion applies regardless of the legal theory of liability or damages, including but not limited to vicarious liability, violation of any law or statute, criminal act, intentional act or negligence, and including but not limited to causes of action based on hiring, supervision, retention, training, instructing, advising, monitoring, providing security, or procedures or protocols.

    **B.**    For purposes of this endorsement, the following definition applies:

"Firearms" includes, but is not limited to, guns, handguns, revolvers, pistols, rifles, shotguns, semiautomatic weapons, stun guns or other device capable of expelling or propelling one or more projectiles by the action of an explosive, combustible propellant, or compressed air.

\* \* \*

## UNDERLYING LAWSUIT

15. The First Amended Complaint in the Underlying Lawsuit ("Underlying Complaint") alleges that on March 8, 2025, Pacheco was present at a tavern or liquor dispensing establishment, known as Mansion Live. A true and correct copy of the Underlying Complaint is attached hereto and incorporated herein as **Exhibit B.**

16. Mansion Live is alleged to have employed security officers, bouncers and/or doormen to perform security duties at Mansion Live. This includes Kevin Henly, Jr., who on March 8, 2025, was allegedly performing security duties at Mansion Live.

17. Prior to March 8, 2025, there were multiple instances of fights that occurred inside the Mansion Live establishment.

18. As such, Mansion Live knew or should have known that the environment, patrons, and/or locale at Mansion Live required security. Yet, the security working at Mansion Live did not

regularly use metal detectors when individuals would enter the establishment.

19. A fight broke out inside Mansion Live on the dance floor on March 8, 2025, while Pacheco was dancing with her boyfriend, Chimborazo.

20. During the altercation on the dance floor, Henly brandished a handgun and discharged the weapon. Pacheco was struck by the bullet discharged from the handgun.

21. Count I against Mansion Live asserts a direct negligence claim for wrongful death. It is specifically alleged that Mansion Live negligently failed to provide appropriate security to ensure the safety of its patrons, failed to staff an appropriate number of security guards to protect against the misconduct of patrons that would cause injuries to other patrons on the premises, failed to properly train and supervise its security guards, hired a security officer with a criminal history, allowed its security guard(s) to carry a concealed firearm when it was unsafe to do so, allowed its security guard(s) to carry a concealed firearm when he did not have a Firearm Owners Identification (FOID) card, allowed its security guard(s) to discharge a firearm inside Mansion Live when it was unsafe to do so, and as otherwise careless and negligent in the operation of Mansion Live. It is further alleged that as a direct and proximate result of one or more of these negligent acts and/or omissions, Pacheco sustained injuries that resulted in her death on March 8, 2025. Her heirs, in turn, suffered grief, sorrow, loss of consortium/society, and other losses.

22. Count II pleads vicarious liability against Mansion Live for wrongful death. It is alleged that Henly was an employee, agent, servant, and/or apparent agent of Mansion Live while he was working security on March 8, 2025. It is then alleged that Henly carelessly brandished a handgun during the altercation inside Mansion Live, carelessly discharged a handgun inside Mansion Live when it was not safe to do so, carried a concealed handgun while working as a security guard at Mansion Live when it was not safe to do so, failed to obtain the appropriate license to carry a concealed handgun inside Mansion Live, and was otherwise careless and negligent in performing his security duties at Mansion Live. It is further alleged that as a result of one or more of these negligent acts and/or

omissions, Pacheco sustained injuries that resulted in her death. Her heirs, in turn, suffered grief and other damages.

23. Count VI alleges that Mansion Live is liable for negligent infliction of emotional distress to Chimborazo. It specifically alleges that Chimborazo was dancing with Pacheco on the dance floor when the altercation occurred. Henly discharged the handgun during the altercation, and the bullet struck Pacheco while she was in close proximity to Chimborazo. Chimborazo was, thus, allegedly in the "zone of danger" at this time and feared for his own safety. As a result, Count VI asserts that Mansion Live is liable for negligent infliction of emotional distress on Chimborazo based on the negligent acts and/or omissions of Mansion Live's employee or agent, Henly.

## COUNT I – NO DUTY TO DEFEND

24. Scottsdale incorporates by reference paragraphs 1-23 above as if fully stated herein.

25. The Policy is subject to the Total Assault and/or Battery Exclusion, which provides that the Policy does not provide coverage for "bodily injury," medical payments, "damages," or "injury" directly or indirectly arising out of any assault and/or battery committed by any person.

26. Counts I and II of the Underlying Complaint against Mansion Live are fundamentally premised upon the alleged battery and/or assault upon Pacheco, when she was struck by the bullet from the firearm that Henly discharged.

27. Count VI against Mansion Live is based on the alleged negligent infliction of emotional distress to Chimborazo, when he was assaulted by being placed in fear of an imminent battery because Pacheco was shot while standing in close proximity to him.

28. As a result, the Total Assault and/or Battery Exclusion, which further applies to the failure to suppress or prevent an assault and/or battery, completely precludes all coverage under the Policy for each of the claims asserted against Mansion Live in the Underlying Complaint.

29. In addition, the Absolute Firearms Exclusion precludes coverage for "bodily injury," … "injury," "damages," or medical expenses actually or allegedly arising out of, based upon, or in any

way related to "firearms." The Policy's definition of "firearms" includes guns and handguns.

30. Counts I and II against Mansion Live in the Underlying Complaint allege that Pacheco's injuries and death were caused by a bullet that Henly fired from a handgun.

31. Count VI against Mansion Live in the Underlying Complaint likewise alleges that the negligent infliction of emotional distress to Chimborazo arose from the alleged shooting injury to Pacheco while she was standing in close proximity to him.

32. As a result, the Absolute Firearms Exclusion precludes coverage under the Policy for all of the claims asserted against Mansion Live in the Lawsuit.

33. Hence, Scottsdale has no duty to defend Mansion Live in the Underlying Lawsuit.

## COUNT II – NO DUTY TO INDEMNIFY

34. Scottsdale incorporates by reference paragraphs 1-33 above as if fully stated herein.

35. Because Mansion Live cannot be liable under any theory in the Underlying Lawsuit that could potentially fall within the coverage of the Policy, by virtue of the Total Assault and/or Battery Exclusion and Absolute Firearms Exclusion, Scottsdale necessarily has no duty to indemnify Mansion Live against any adverse judgment or settlement in connection with the Underlying Lawsuit.

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Court to declare and adjudge the controversy as follows:

A. Scottsdale has no duty to defend Mansion Live in connection with the Underlying Lawsuit;

B. Scottsdale has no duty to indemnify Mansion Live in connection with the Underlying Lawsuit; and

C. All other relief this Court deems just and equitable under the circumstances, including the award of costs.

DATED:  August 28, 2025 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**FREEMAN MATHIS & GARY, LLP**

　　　　　　　　　　　　　　　　　　　　*/s/ Jonathan L. Schwartz*
　　　　　　　　　　　　　　　　　　　　Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz (ARDC #6287338)
Jason S. Callicoat (ARDC #6285863)
FREEMAN MATHIS & GARY LLP
33 N. Dearborn St., Suite 1430
Chicago, IL 60602
Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com
jason.callicoat@fmglaw.com