IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Scottsdale Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 10339 |
| | ) | No. 25 C 15075 |
| | ) | Consolidated |
| Mansion Live, LLC *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

Defendant Mansion Live, LLC operates a nightclub which has suffered from intermittent eruptions of violence, resulting in several underlying lawsuits against the company and its employees. Plaintiff Scottsdale Insurance Company insured Mansion Live and has sued for a declaratory judgment that it need neither defend nor indemnify Mansion Live nor any other litigant in those underlying suits. Victor Muñoz Marquez, a patron who was assaulted at Mansion Live's nightclub, is the only defendant who has not defaulted. Scottsdale now moves for summary judgment as to Marquez, and I grant that motion.

**I.**

On May 6, 2024, Marquez attended a bachelor party at the Mansion Live nightclub.[1] Defendant Jason Pinkey was working that night as a bouncer or security guard. At some point, Pinkey injured Marquez. At the time, Mansion Live was covered by an insurance policy it had purchased from Scottsdale.

In September 2025, Marquez sued Pinkey, Mansion Live, and the security contracting company that directly employed Pinkey in Illinois state court. Marquez alleged that on the night of May 6, 2024, Pinkey "violently and brutally physically assaulted [Marquez] by striking [Marquez], causing [Marquez] to be thrown to

---

[1] As Scottsdale has noted, Marquez failed to file a response to Scottsdale's Local Rule 56.1 statement, which means that I can accept the facts in Scottsdale's statement as true for the purposes of the present motion. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014) ("[I]t is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required.").

But as Scottsdale also points out elsewhere, I analyze an insurer's duty to defend by comparing the allegations in the complaint in the underlying lawsuit to the insurance policy in question, so regardless of Marquez's error, the substance of my review remains restricted to those two documents. *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 819 (7th Cir. 2008). Any other necessary facts I draw from Scottsdale's L.R. 56.1 statement.

I omit all facts concerning the defaulting defendants.

the ground and become severely injured.” ECF 47 at 13. On that basis, Marquez alleged in the count concerning Mansion Live that the company had breached its duty to “protect, secure, and keep [him] safe from danger and injury” by, *inter alia*, failing to properly hire, train, and staff its security force, specifically referring to Pinkey, and in failing to “interject [Mansion Live’s] security guards into an altercation that occurred before it escalated into a violent physical assault.” *Id.* at 15–16. In the count concerning Pinkey, Marquez alleged that the guard had assumed a duty to protect Marquez and had breached that duty by using excessive force against him. *Id.* at 26–27. In December 2025, Scottsdale filed this lawsuit, seeking a declaratory judgment that it owed neither Mansion Live nor Pinkey a duty to defend or indemnify with regard to the underlying suit.[2]

The insurance contract covering Mansion Live from December 2023 to December 2024, when Marquez was injured, was a Scottsdale commercial general liability policy, numbered CPS7912444 (the

[2] Scottsdale actually filed two lawsuits. The first, 1:25-CV-10339, named Mansion Live, Pinkey, and Marquez. The second, 1:25-CV-15075, named Mansion Live and three other now-defaulting defendants involved in violent incidents at the nightclub. Given that Scottsdale’s argument as to all these defendants was the same—that the policy it sold Mansion Live simply excludes coverage for violent incidents of the kind concerned in both cases—Mansion Live moved, successfully, to consolidate them.

"policy"). The policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'...to which this insurance applies," but clarified, perhaps redundantly, that Scottsdale had "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'...to which this insurance does not apply." ECF 1-1 at 20. The policy included a "Total Assault and/or Battery Exclusion" which reads in relevant part:

> This insurance does not apply to 'bodily injury,'...medical payments, 'damages' or 'injury' directly or indirectly arising out of, caused by, or in any way related to:
>
> 1. Assault and/or battery committed by any insured, any 'employee' of any insured, or any other person; or
>
> 2. The attempt or failure to suppress or prevent assault and/or battery by any person in 1. above; or
>
> 3. Any attempt by any person to avoid, prevent, suppress or halt any actual or threatened assault and/or battery; or
>
> 4. The selling, serving or furnishing of alcoholic beverages which results or is alleged to have resulted in an assault and/or battery...

ECF 1-1 at 70. The assault and battery exclusion also disclaimed coverage for "[t]he negligent: a. Employment; b. Investigation; c. Supervision; d. Hiring; e. Training; f. Monitoring; g. Reporting to the proper authorities, or failure to so report; or h. Retention; of any person for whom any insured is or ever was

legally responsible and whose conduct would be excluded by paragraphs 1., [or] 2., above." *Id.* The exclusion further provides:

> B. This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the assault and/or battery.
>
> ...
>
> D. This exclusion applies to all acts or omissions and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.
>
> ...
>
> F. With respect to this exclusion, "bodily injury" or "injury" includes mental injury or distress, disability, or sexual dysfunction.

*Id.* at 71.

Before me is Scottsdale's motion for summary judgment, which asks me to find that the above exclusion absolves it of any duty to defend or to indemnify anyone related to Marquez's underlying suit.

**II.**

The parties agree that Illinois law applies. An insurance policy is a contract, and the interpretation of a policy is governed by contract principles. *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766-67 (7th Cir. 2010). My role is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773,

777–78 (7th Cir. 2015) (citations omitted). Unless a contract is ambiguous, meaning that its text is "subject to more than one reasonable interpretation," I interpret it according to its plain terms, given their ordinary meanings. *Bruder v. Country Mut. Ins. Co.*, 620 N.E.2d 355, 362 (Ill. 1993).

Interpretation of an insurance policy, including whether an insurer had a duty to defend, is proper at summary judgment. *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008). The question to be decided is narrow. To determine whether there was a duty to defend, I "compare the facts alleged in the [complaint in the underlying lawsuit] to the relevant provisions of the...insurance polic[y]," treating the facts in the underlying complaint as if they were true. *Id.* at 819. If the facts as alleged fall "within, or potentially within, the [insurance policy's] coverage, the [insurer is] obligated to defend" the insured, even if the underlying complaint contains "groundless, false, or fraudulent allegations, and even if only one of several theories of recovery [falls] within the potential coverage of the umbrella policies." *Id.* It is the insurer's burden to show that the claim at issue "falls within a provision that limits or excludes coverage." *Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 423 (7th Cir. 2005).

## III.

Scottsdale's argument for summary judgment is simple: Marquez has premised his claims on an alleged assault, and the policy at issue excludes the results of assaults from coverage. Marquez responds with three theories. First, he contends that Scottsdale's claim as to indemnification is unripe because there is no underlying judgment yet. Second, as best I can tell, he attempts to import the tort principle of an intervening or superseding cause to argue that Pinkey's "negligent act" falls outside of the assault and battery exclusion because it was a "separate and independent basis for liability and coverage." ECF 47 at 3. And third, Marquez asserts that Mansion Live's negligence was a tort arising separately from and independent of Pinkey's assault on him.

Marquez also maintains, in a single sentence without citation, that the assault and battery exclusion violates Illinois public policy. But he has forfeited that argument—it is in any case meritless—by failing to develop it. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments...are waived."); *see also United Nat. Ins. Co. v. Ent. Grp. Inc.*, 945 F.2d 210, 213-14 (7th Cir. 1991) (enforcing an assault and battery exclusion substantially similar to the one in the instant policy).

## A. Applicability of the Exclusion

The exclusion at issue applies to bodily and mental injuries "in any way related to" an assault committed by the insured, its employees, or "any other person." ECF 1-1 at 70. In the underlying suit, Marquez alleged that "at all times relevant to this action," Pinkey was "MANSION LIVE LLC's employee, agent, servant, and security guard," and that Pinkey "violently and brutally physically assaulted [Marquez] by striking [Marquez], causing [Marquez] to be thrown to the ground and become severely injured." ECF 47 at 13. In his count against Mansion Live, Marquez alleged that as a result of Mansion Live's "negligent acts, [Marquez]...sustained severe and permanent injuries...suffered great pain and anguish, both in mind and body, and...will expend and become liable for, large sums of money for medical care." *Id.* at 17. His count against Pinkey was based on the same conduct and the same injuries. *Id.* at 28.

These allegations fall squarely within the policy exclusion. Every theory of negligence Marquez asserts arises from Pinkey's assault on his person. That is, they all relate to "bodily injury" or mental anguish "directly or indirectly arising out of, caused by, *or in any way related to*...[an] [a]ssault and/or battery committed by...any 'employee' of any insured, or any other person." ECF 1-1 at 70 (emphasis mine). And inasmuch as Marquez has alleged

a negligence claim against Pinkey, it is clear that the facts as pled in his complaint describe Pinkey intentionally assaulting him. *See* ECF 47 at 28 (painting the assault as a "brutal violent criminal attack"). Finally, Marquez's three arguments from his response to the motion for summary judgment fail to extract his underlying claims from the exclusion.

**B. Ripeness**

First, while Marquez is correct that an insurer's claim for a declaration that it owes no duty to indemnify is generally "not ripe for adjudication until an insured becomes legally obligated to pay the damages in the underlying action," that does not get him anywhere. *Gregory v. Farmers Automobile Ins. Ass'n*, 910 N.E.2d 763, 765 (Ill. App. Ct. 2009). This is because "[a]n insurer's duty to defend is much broader than its duty to indemnify," meaning that if an insurer has no duty to defend, it necessarily lacks any duty to indemnify. *Gen. Agents Ins. Co. of Am. Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). And "a declaratory judgment action brought to determine an insurer's duty to defend is ripe upon the filing of a complaint against the insured." *Gregory*, 910 N.E.2d at 765.

Here, there has been a complaint filed in the underlying lawsuit, meaning that Scottsdale's claim for declaratory judgment as to its duty to defend is ripe. *Id.* So, even if Marquez is

technically correct that judgment as to indemnification would be premature, it is immaterial, because a declaration as to the duty to defend is ripe and will extinguish any duty to indemnify. *Gen. Agents*, 828 N.E.2d at 1098.

### C. Intervening Act and Pinkey's Negligence

Marquez next argues that I should deny summary judgment because:

> [T]here are genuine issues of material fact as to whether Jason Pinkey's intervening negligent act in attempting to stop an altercation falls outside of the assault and battery exclusion because [Pinkey']s negligent conduct constituted a separate and independent basis for liability and coverage. Jason Pinkey's negligent act in attempting to stop an altercation involving a group of men celebrating a bachelor party, including [Marquez], constitutes an independent negligent occurrence separate from an intentional assault.

ECF 47 at 3. Marquez writes that "Illinois courts have recognized that an employee's intentional act is separate and distinct from an employer's independent negligent conduct, and that holding the employee's intentional conduct eliminates coverage would improperly eliminate the distinctions between the employee's battery and the employer's independent negligence," citing *Stonegate Ins. Co. v. All City Towing, Inc.*, 253 N.E.3d 1039 (Ill. App. Ct. 2024). ECF 47 at 3. He then contends that "where an employee negligently intervenes to stop an altercation with a peacekeeping purpose as in this matter, the employee's conduct is not the intentional battery itself," citing the same case. *Id.* And

then he writes that "an employee's attempt to break up an altercation is a distinct act from the assault," and that "the focus for insurance coverage analysis is on the allegations against the insured, not the allegations against the employee who committed the intentional act," citing *Oakley Transport Inc. v. Zurich Ins. Co.*, 648 N.E.2d 1099 (Ill. App. Ct. 1995), and *Am. Fam. Mut. Ins. Co. v. Enright*, 781 N.E.2d 394 (Ill. App. Ct. 2002), for the former and latter contentions, respectively. ECF 47 at 3.

There are several problems with this argument. First is that Marquez has attempted to add facts not in his complaint—that Pinkey was breaking up a fight and did not intentionally assault him—both by asserting them in his motion and attempting to submit additional video evidence. But my review is restricted to the facts that Marquez pled in the underlying suit, even if they are false (and they do not appear to be; both the police report and the separate affidavit Marquez submitted in support of his video describe an intentional assault). *BASF*, 522 F.3d at 819.

The second issue is that half of this section seems to be based on Pinkey's act having been negligent, while the other half seems to rely on its having been intentional. Although I do not exactly follow Marquez's thinking—this is the next issue I address—that contradiction would appear to present a problem.

The third difficulty with this argument is that its logic is opaque to me, and the fact that Marquez failed to use a single pinpoint citation has not helped me to follow it. But having scrutinized the cases, they are all inapposite, and although I cannot tell where in each case Marquez wanted me to look, I either cannot find the propositions he attributes to the opinions, or I have found the propositions but discovered that he has misused them. For example, *Stonegate* does contain language about distinguishing between an employee's intentional act and an employer's negligence but only does so because the policy at issue in that case, written differently than the policy in this case, depended on such a distinction. 253 N.E.3d at 1046–47. Marquez's other citations in service of this argument are as misguided. *See* ECF 48 at 3–6 (briefing each case).

*Oakley* serves at least some purpose because it directly contradicts what Marquez seems to be arguing, or at least part of what he seems to be arguing, which is that he can use the tort concept of an intervening cause to somehow separate Mansion Live's negligence as to the hiring and retention of Pinkey from Pinkey's assault of Marquez.[3] But rather than helping Marquez, the *Oakley*

---

[3] A superseding or intervening cause is:

> [A]n independent act or force that breaks the causal chain between a defendant's culpable act and the claimed

court found that the tort concept of an "intervening cause" is foreign to contract and inapplicable in an insurance context. 648 N.E.2d at 1104–07. Suffice to say that nothing in Marquez's argument removes the behavior alleged in his underlying complaint from the clear ambit of the assault and battery exclusion.

**D. Mansion Live's Negligence**

Marquez's third contention is that his claims as to Mansion Live's negligence exist independently of any assault that he suffered at Pinkey's hands. But as Scottsdale notes, this attempted reframing accomplishes nothing, because everything comes back to the assault. The injury Marquez alleges in his negligence claim

---

> injury. Superseding cause is any cause intervening between the time of the defendant's allegedly tortious conduct and that of the plaintiff's claimed injury which, although not disproving that the defendant's conduct proximately caused the plaintiff's claimed injury, prevented the defendant's conduct from being considered a legal cause of that injury; such superseding causes are limited to intentionally harmful acts, forces of nature, or criminal events, unforeseeable by the defendant, which intervene in the sequence of events leading from the defendant's alleged negligence to the plaintiff's alleged injury and proximately cause that injury. A cause can be thought of as a "superseding cause" only if it is a cause of independent origin that was not foreseeable.

86 C.J.S. Torts § 25.

against Mansion Live *is* Pinkey's assault and its effects. And even if I were to treat Mansion Live's negligent hiring, retention, or training of Pinkey as somehow separate from the *result* of that negligent hiring, retention, and training, the assault and battery exclusion would explicitly apply to it anyway.

Along with bodily injury or mental anguish "arising out of" or "related to" an assault or battery committed by "any...person," the exclusion also disclaimed coverage for "The negligent: a. Employment; b. Investigation; c. Supervision; d. Hiring; e. Training; f. Monitoring; g. Reporting to the proper authorities, or failure to so report; or h. Retention; of any person for whom any insured is or ever was legally responsible..." ECF 1-1 at 70. And even if, as discussed previously, I allowed Marquez to amend his underlying complaint such that rather than assaulting him, Pinkey had only inadvertently and negligently injured him while breaking up a fight, that scenario would also be squarely within the assault and battery exclusion, which applied to:

> 2. The attempt or failure to suppress or prevent assault and/or battery by any person...; or
>
> 3. Any attempt by any person to avoid, prevent, suppress or halt any actual or threatened assault and/or battery...

ECF 1-1 at 70.

No matter how Marquez attempts to frame or reframe his allegations or how the assault relates to negligence, the point is that there was an assault and all of Marquez's claims arise out of, and are related to, that assault.

**IV.**

Scottsdale's motion for summary judgment is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: September 30, 2026